Peck, J.
The plaintiff in this action is a married woman, suing in her own name and without joining her husband, to recover the-value of two horses and a harness, claimed to have been exempt from sale upon execution, and which were sold by her husband to the defendants in December, 1858, without her consent. The only *476 -question is whether the facets stated in the petition and admitted by the demurrer, make a case within the act of April 17, 1857 (54 O. L. 219), “securing to married women such personal property as may be exempt from execution,” etc. This statute, so far as it is applicable to the case made in the petition, reads as follows:
“ Seo. 1. Be it enacted that no married man shall sell, dispose of, ■or in any manner part with any personal property which now is or may hereafter be exempt from sale upon execution, without having first obtained the consent of his wife thereto.
“ Sec. 2. If any married man shall violate the provisions of the foregoing section, his wife, in her own name, may commence and prosecute to final judgment and execution, a civil action for there-covery of such property, or its value in money.”
The demurrer admits the marriage and cohabitation of the plaintiff with John Slanker at the time and for years before the sale, in Huron county; their ownership of the said horses and harness, •which then and before that time had been used and employed by the said John in the business of agriculture; that the plaintiff and her said husband are not the owners of any homestead or other real estate, *and that the entire value of all the ¡jroperty, of -every description, belonging to them, including said horses and harness, did not amount to the sum of $300. And it further admits, that the defendants, in December, 1858, with a full knowledge of all these facts, purchased said horses and harness from the husband of the plaintiff without her consent, and have converted the same to their own use.
If the horses and harness, at the time of such sale and conversion, were exempt from sale upon execution against the husband, within the meaning of the first section of the act above referred to, the sale by the husband without the wife’s consent, expressed or implied, was such a violation of its provisions as authorized the plaintiff, under the second section of the'act, to maintain the present action in her own name, to recover from the defendants the value thereof.
This exemption is claimed under and by virtue of the act of March 27, 1858 (55 Ohio L. 23), amendatory of the 8th section of the homestead law of March 23,1850, which amended section reads ,as follows:
“ Sec. 8. That it shall be lawful for any resident of Ohio, being the head of a family, and not the owner of a homestead, to hold *477 exempt from execution or sale as aforesaid, personal property, to be-selected by such person, not exceeding $300 in value, in addition to-the amount of chattel property now by law exempted. .The value of said property to be estimated and appraised by two disinterested householders of the county, to be selected by the officer holding the-execution, who shall be sworn by said officer impartially to make-such appraisement.”
This statute, like the others exempting property from sale upon execution, presupposes a levy upon property claimed to be exempt, and a requisition for its discharge by the execution debtor; but the-act of April 17, 1857, has reference to a voluntary sale by him who, under the ^exemption statutes, is required to demand its restoration, and does not require that there should be any seizure, or-attempted seizure upon execution, or any requirement for its release. The only reasonable construction of the law of 1857 is, to-prohibit the husband from disposing of any property, without the-consent of his wife, which would have been exempt from sale, if an execution had been levied thereon, and he had, in good faith, insisted upon all the exemptions secured to him by the statutes. The-petition shows that the husband of petitioner was a resident of Ohio, and the head of a family, and not the owner of any homestead; he was, therefore, within the purview of the amendatory act. of March 27,1858, entitled to hold exempt from sale upon execution, personal property to be selected by him, not exceeding $300 in value, in addition to the amount of chattel property exempted by previous-laws. If an execution had been issued and levied upon the horsos- and harness sold by him to defendants, and he had, in good faith, insisted upon the exemption secured by this act, it is manifest that the officer would have been obliged to redeliver them to him, be-caiise it is admitted by the demurrer, that the entire property of . the debtor, including the property supposed to be levied on, did not amount in value to the exemption prescribed. -
But it is said that the property to be retained by the debtor in-lieu of a homestead, is to be selected by him, and until such selection is made, no one can know whether he desires to retain the specific articles levied on or not. Where it appears that the debtor had, at the time, more personal property than he was by law entitled to retain, a serious difficulty might arise; but where, as in the-present case, all that he owns is confessedly insufficient to satisfy the exemption, no such embarrassment exists. It is no longer a case- *478 •of selection, but one of mere demand. He might insist upon the restoration of the whole, and if so, a proper construction of the act of 1857 prohibits him from disposing of it without the consent of his wife.
*But it is insisted that the exempted property which the 'husband, by the act of 1857, is prohibited from selling without the consent of his wife, should be limited to the sale of such property as is specifically and absolutely exempt, and not extended to prop■erty which the debtor is to select; that, in the one case, the de-scription of the property is calculated to put the vendee upon inquiry, while the other would enable the vendor and his wife, •separately or by collusion, to perpetrate gross frauds upon third persons, and render it wholly unsafe to purchase any personal property from a married man, unaccompanied by his wife, or her written authority. There is apparently much force in the suggestion ; but, after all, it is perhaps more specious than solid. In all purchases of personal property in this country, the vendee necessarily assumes the risk of the title and authority of his vendor. If he had no title, and no authority to sell, the property is subject to reclamation from the vendee. To give to the act of 1857 the extremely limited application claimed for it by the defendants • would render it altogether insignificant in its results. The articles ■specifically and absolutely exempt are extremely limited. Most-of the articles enumerated are not exempt as.of course, but their exemption is made to depend upon their quantity or value, or on the absence of other articles for which they are to be substituted. Frost v. Shawk, 3 Ohio St. 271. The articles absolutely exempt, ■and to which the defendants ask to have the statute of 1857 restricted, are mostly not objects of barter and sale, nor readily convertible to the support of a family. The legislature, in the exemption as a substitute for a homestead, certainly designed to exempt any property, to the required amount, belonging to the debtor, the •use or sale of which might contribute to the maintenance of the wife and family. The legislation prior to 1857 prohibited all forced sales of such property, and the law of 1857, ministering to the same end (securing a support to the wife and family), prohibited all voluntary sales to which the wife *did not assent. The statute prohibits the selling of any property then or thereafter •exempted, and not articles specifically exempt. Under the construction contended for, the substitute for a homestead could never *479 ¡■advantage the wife in a case of sale by the husband, as it is to be selected by the husband, and from articles not otherwise exempt. Such a consequence could not have been intended by the legislature. In short, we think the interition of the legislature too clear .and unmistakable to warrant us in frittering away the enactment because it may possibly lead to abuses. The act is somewhat ■crude — perhaps impolitic — and may require amendment, for the protection of purchasers, the family, and future creditors; but these are considerations for the legislature, and not for the judiciary.
Again, it is insisted that the action, under the averments of the petition, should have been for the recovery of the specific property, and not for its value ; and in this connection it is urged that the action spoken of in the second section of the law of 1857 is merely an action for the recovery of specific personal property, and the words “ or its value in money ” have reference to the recovery of damages in such action, under section 186 of the code, where the property has not been seized, or the plaintiff has failed to give the undertaking required by the code. We think, however, that the second section of the act of 1857, above quoted, confers upon the wife the election to sue, either for the specific property or for its value in money. The purchase was prohibited by law and a violation of the plaintiff’s rights; and, uj>on common-law principles, she might pursue either remedy, retake the property, or recover its value. The statute merely confirms this common-law right of election. The consent required by the statute, and denied in the petition, need not necessarily precede the sale. It may be precedent, concomitant, or subsequent. It may also be either express or implied, and may be proved by positive or by circumstantial •^evidence. With this latitude for the ascertainment of the truth, there is little cause to apprehend any successful collusion between the husband and wife to defraud a purchaser; but, should there be, the proper remedy is a repeal or amendment of the law by the constitutional authority. It should be abrogated by legislative enactment, and not nullified by judicial interpretation.
We’ are therefore clearly of the opinion that the Huron county court of common pleas erred in sustaining the demurrer to the petition of the plaintiff, and that the facts set forth in her said petition, if true, did constitute a valid cause of action, under the statute, in favor of the plaintiff.
*480 The judgment is therefore reversed, and the cause remanded for further proceedings.
Brinicerhoee, C. J., and Scott, Sutliee, and Gholson, JJ., concurred.